The relief described hereinbelow is SO ORDERED.

Signed February 27, 2017.



_____
**Ronald B. King**
**Chief United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **WAYSIDE PRODUCTIONS INC.** | § | **CASE NO. 16-50198-RBK** |
| | § | **(Chapter 11)** |
| **Debtor** | § | |

<u>**ORDER CONFIRMING PLAN**</u>

     Wayside Productions Inc., the Debtor, filed a Second Amended Plan of Reorganization dated January 30, 2017 (the "Plan") and an Amended Disclosure Statement dated December 14, 2016 (the "Disclosure Statement") with the Court. Copies of the Plan and the Disclosure Statement were transmitted to all holders of claims and interests and to the United States Trustee, and a hearing on confirmation of the Plan was held on February 15, 2017. The Debtor and its counsel appeared at the hearing. After considering the Plan and the objections filed thereto, the evidence and testimony, and the arguments of counsel,

**THE COURT HEREBY FINDS AND DETERMINES AS FOLLOWS:**

1.    That every person or entity required to receive notice of the hearing on confirmation of the Plan and of the hearing on the adequacy of the Disclosure Statement received timely and adequate notice thereof.

2.    That the Plan complies with all applicable provisions of the Bankruptcy Code.

3.      That the Debtor has complied with all applicable provisions of the Bankruptcy Code.

4.      That the Plan has been proposed in good faith and not by any means forbidden by law.

5.      That all payments made or to be made by the Debtor in connection with the case, or in connection with the Plan, have been approved by the Court as reasonable, or will be subject to approval by the Court prior to payment.

6.      That with respect to each impaired class of claims, each holder of a claim in each impaired class has accepted the Plan, or will receive or retain under the Plan on account of the claim property of a value, as of the effective date of the Plan, that is not less than the amount that the holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the effective date of the Plan.  No holder of a secured claim has made an election under Section 1111(b)(2) of the Bankruptcy Code.

7.      That all holders of claims and interests impaired under the Plan have been given adequate opportunity to vote to accept or reject the Plan.  The holders of allowed claims in class 4 have accepted the Plan within the meaning of Section 1126(c) of the Bankruptcy Code.

8.      That except to the extent that the holder of a particular claim has agreed otherwise, the Plan provides that:  (a) with respect to a claim of a kind specified in Section 507(a)(1) or (a)(2) of the Bankruptcy Code, on the effective date of the Plan the holder of each claim will receive on account of the claim cash equal to the allowed amount of the claim; and (b) with respect to claims of a kind specified in Section 507(a)(8) of the Bankruptcy Code, the holder of each claim will receive on account of the claim either cash equal to the allowed amount of the claim on or before the effective date of the Plan, or deferred cash payments, over a period not exceeding five (5) years after the date of assessment of the claim, of a value, as of the effective date of the Plan, equal to the allowed amount of the claim.

9.      That at least one class of claims of the Debtor that is impaired under the Plan has accepted the Plan, as determined without including the acceptance of the Plan by any insider of the Debtor holding a claim in the class.  The class of impaired claims that have accepted the Plan is class 4.

10.     That confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor.

11.     That all fees payable under 28 U.S.C. 1930, as determined by the Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payment of all fees as required by Section 1129(a)(12) of the Bankruptcy Code.

12.     That the Disclosure Statement meets the requirements of Section 1125 of the Bankruptcy Code.  The Debtor has filed the Disclosure Statement in good faith with reasonable care and diligence, and has not knowingly or negligently included in the Disclosure Statement any materially misleading or erroneous statements or representations.

13.     That the solicitation of acceptances of the Plan by the Debtor was in good faith.

14.     That the Debtor and all holders of claims and interests are bound by the Plan within the meaning of Section 1141 of the Bankruptcy Code.

15.     That the Plan is fair and equitable to all parties-in-interest, including the Debtor, all unsecured creditors, all secured creditors, and all interest holders.

16.     That the documents described in the Plan to be executed by the Debtor pursuant to the Plan are each valid, binding, and enforceable against the Debtor, in accordance with their terms, and are entered into for good and valuable consideration.

Based upon the findings and determinations listed above, IT IS HEREBY ORDERED THAT:

1.     The Plan, a copy of which is annexed hereto as Exhibit A, be, and hereby is, confirmed.

2.     The provisions of the Plan, and all documents executed in conjunction with the Plan, and this Confirmation Order are, as of the effective date of the Plan, effective and binding on the Debtor, all creditors of the Debtor, and any other parties-in-interest, as well as their respective heirs, successors, assigns, or other persons claiming through them.

3.     The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order, including but not limited to the prosecution of any and all claims and causes of action currently pending in the Litigation, as defined in the Plan.

4.     The rejection of executory contracts and unexpired leases as provided in the Plan are hereby approved.

5.     Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known address.  Monthly payments to Class 2 creditors shall be as follows:

| Tax Creditor | Monthly Payment | Interest Rate |
|---|---|---|
| Internal Revenue Service | $3,000.00 | 4% |
| Texas Comptroller | $4,000.00 | 4.75% |
| Texas Workforce Comm. | $150.00 | 4.75% |

6.     BMO Harris Bank N.A. shall retain the perfected security interests in each of the two (2) 2013 Hino Model 338 van trucks with "Serial Number[s]" ending in "...53292" and "...53332" (collectively, the "Vans") granted to it by the terms of the Debtor's contracts with BMO Harris Bank relating to the Vans until BMO Harris Bank has been paid in full, with interest, in accordance with the terms of the Debtor's contracts with BMO Harris Bank relating to the Vans as modified by the Plan.

7.    Except to the extent modified hereby or by the terms hereof or by the terms of the Plan, and except as supplemented or modified by the terms hereof or by the terms of the Plan, the Debtor's contracts with BMO Harris Bank relating to the Vans, and all related guarantees, shall all remain in full force and effect according to their original terms.

8.    The Court shall retain jurisdiction over this case to the extent provided in the Plan.

###

Morris E. "Trey" White III
1100 NW Loop 410 #700
San Antonio, Texas 78213
(210) 225-4500
(210) 212-4649 (fax)
treywhite@villawhite.com


Approved:


 _/s/ William Thomas McLain_____
William Thomas McLain
Reagan McLain & Hatch, LLP
White Rock Tower, Suite 300
6510 Abrams Road
Dallas, Texas  75231
(214) 691-6622, ext. 104
(214) 691-2984 (fax)
Attorney for BMO Harris Bank N.A.

EXHIBIT "A"
Debtor's Second Amended Plan of Reorganization

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| WAYSIDE PRODUCTIONS INC. | § | CASE NO. 16-50198-RBK |
| | § | (Chapter 11) |
| Debtor | § | |

DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN
OF REORGANIZATION

Wayside Productions Inc., ("Debtor"), hereby proposes the following Chapter 11 Plan of Reorganization (the "Plan"):

ARTICLE I

Definitions

As used in this Plan the following terms shall have the respective meanings assigned to them below, unless the context otherwise requires:

Section 1.1.        "Administrative Expense"   means any right or entitlement  to payment that arises from a cost or expense of administration of the Estate allowed under §503(b) of the Bankruptcy Code that is entitled to priority under §507(a)(1) of the Bankruptcy Code. A right or entitlement for which Bankruptcy Court approval is required is an Administrative Expense only upon entry of a Final Order approving such Administrative Expense, which approval shall be sought by application filed not later than 60 days after the Effective Date. The failure to file an Application for Payment of Administrative Expense within such time shall result in any claim for payment of such an expense to be forever barred except as may be permitted by the Bankruptcy Court for cause.

Section 1.2.        "*Ad Valorem* Tax Claims"   means that certain tax claim of Bexar County Tax Assessor Collector ("Bexar County"), a governmental unit in the estimated principal amount of $21,027.22.

Section 1.3.        "Affiliate"   means, as to any Person, any other Person which directly or indirectly controls, or is under common control with, or is controlled by, such Person. As used in this definition, "control" (including, with its correlative meanings, "controlled by" and "under common control with") shall mean possession, directly or indirectly, of power to direct or cause the direction of management or policies of the business of the Debtor.

Section 1.4.        "Allowed Claim or Allowed Interest"   means a Claim or   Interest, as the case may be, that (a) has been scheduled by the Debtor as liquidated, undisputed, and not contingent, and as to which no objection to the allowance thereof has been interposed prior to the

Effective Date; (b) has been timely filed with the clerk of the Bankruptcy Court and as to which no objection to the allowance thereof has been interposed prior to the Effective Date; (c) has been allowed (but only to the extent allowed) by a Final Order; or (d) is specified herein to be an Allowed Claim or Allowed Interest.

Section 1.5. "<u>Bankruptcy Code</u>" means Title 11 of the United States Code, 11 U.S.C. §101 <u>et seq.</u>, as in effect on the Petition Date.

Section 1.6. "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, or such other court as may exercise jurisdiction over the Case.

Section 1.7. "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, applicable to the Case.

Section 1.8. "<u>Business Day</u>" means any day, except Saturday, Sunday or national holidays.

Section 1.9. "<u>Case</u>" means the bankruptcy case commenced by the filing of the Debtor's Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code on the Petition Date, bearing case number 16-50198-rbk

Section 1.10. "<u>Cash</u>" means legal tender of the United States for the payment of public and private debts, including without limitation, cash, cash equivalent, bank deposits, checks and other similar items.

Section 1.11. "<u>Causes of Action</u>" means all claims, cause of action, and causes of action now owned or hereafter acquired by the Debtor, by Debtor as debtor-in-possession, or by a trustee, and the cash and non-cash proceeds thereof, whether arising under the Code or other federal or state law, including without limitation, any causes of action arising under §§544, 547, 548, 550, 551 or other sections of the Bankruptcy Code.

Section 1.12. Intentionally Deleted

Section 1.13. "<u>Claim</u>" means a claim against Debtor, whether or not asserted, as defined in §101(5) of the Bankruptcy Code.

Section 1.14. "<u>Claims Bar Date</u>" means a date set by the Bankruptcy Court setting a deadline for the filing of unsecured, non-priority claims.

Section 1.15. "<u>Class</u>" means a category, designated herein, of holders of Claims or Interests.

Section 1.16. "<u>Confirmation Date</u>" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

Section 1.17.  "Confirmation Order" means the order of the Bankruptcy Court entered in the Case confirming the Plan pursuant to §1129 of the Bankruptcy Code.

Section 1.18.  "Disbursing Agent" means the Debtor, as debtor in possession.

Section 1.19.  "Disputed Claim or Disputed Interest" means a Claim or Interest, or any portion of a Claim or Interest which is not an Allowed Claim or Allowed Interest and the allowance or disallowance of which is not the subject of a Final Order.

Section 1.20.  "Distribution" means a distribution of Cash or property to holders of Allowed Claims pursuant to the terms of the Plan.

Section 1.21.  "Effective Date" means the effective date of the Plan and shall be a date in no event later than April 1, 2017.

Section 1.22.  Intentionally Deleted

Section 1.23.  "Estate" means the bankruptcy estate of the Debtor created in the Case pursuant to §541 of the Bankruptcy Code.

Section 1.24.  "Executory Contract" means any contract (including, without limitation, any unexpired lease to which the Debtor is a party) and which is executory within the meaning of §365 of the Bankruptcy Code.

Section 1.25.  "Final Order" means an Order of Court that (i) has not been reversed, modified, amended or stayed, and as to which the time to appeal, petition for certiorari or seek review or rehearing has expired and as to which no appeal, petition for certiorari, review or rehearing is pending or (ii) as to which any right to appeal, petition for certiorari, review or rehearing has been waived, or (iii) if any appeal, petition for certiorari, review or rehearing thereof has been denied, the time to take any further appeal, to petition for certiorari or further review or rehearing has expired.

Section 1.26.  "Improvements" means all of the estate, right, title and interest in and to any and all buildings and other improvements located on the Land and all building materials, building equipment and fixtures of every kind and nature located on the Land or attached to, contained in or used in any such buildings and other improvements, and all appurtenances and additions thereto and betterments, substitutions and replacements thereof.

Section 1.27.  Intentionally Deleted

Section 1.28.         "Litigation"   means the lawsuit styled as *Wayside Productions Inc. d/b/a Total Media Solutions v. Alfredo De La Fuente, individually and d/b/a Alamo City Comic Con, and Alamo City Comic Con LLC*, Cause No. 2015-CI-05504, pending the 288th Judicial District Court for Bexar County, Texas.

Section 1.29.         "Lien"   shall have the meaning set forth in §101(37) of   the Bankruptcy Code.

Section 1.30.         "Non-Insider Unsecured Claim"   means a Claim other than an Insider Claim, an Administrative Expense, a Tax Priority Claim, Other Priority Claim, *Ad Valorem* Tax Claims, and Other Secured Claims.

Section 1.31.         "Other Priority Claim(s)"   means any Claim which is an unsecured claim entitled to priority under §507(a) of the Bankruptcy Code other than (i) an Administrative Claim and (ii) a Tax Priority Claim.

Section 1.32.         "Other Secured Claims"   means other claims against the Debtor secured by a Lien against some or all of the Property of the Estate, not specifically included in any other class of creditors.

Section 1.33.         "Petition Date"   means January 27, 2016, the date a voluntary Chapter 11 petition was filed by the Debtor.

Section 1.34.         "Plan"   means this proposed Plan of Reorganization, as the   same may be amended from time to time, together with all addendums, exhibits, schedules and other attachments hereto, all of which are incorporated herein by reference.

Section 1.35.         "Plan Documents"   means all documents, agreements, orders   and instruments (besides the Plan), which further evidence or effectuate the Plan.

Section 1.36.         "Professional Fees"   means a Claim of a professional retained   in the Case pursuant to §§327 and 1103 of the Bankruptcy Code or otherwise, for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Confirmation Date.

Section 1.37.         "Property"   means all property of the Estate, including Debtor's right, title, and interest in and to the Litigation, the Improvements, the Leases, all licenses, general intangibles, art work, intellectual property rights, Cash, books, records, logos, contract rights, causes of action and all other property of the Debtor.

Section 1.38.         "Pro rata"   means, from time to time, the proportion that the dollar amount of an Allowed Claim in a particular Class or Classes bears to the aggregate   dollar

amount of all Allowed Claims in such Class or Classes.

Section 1.39.            "Rejection Claim"  means any Claim arising under §502(g) of the Bankruptcy Code.

Section 1.40.            "Taxes"  means all taxes, charges, fees, levies or  other assessments by any federal, state, local or foreign taxing authority, including without limitation income, excise, property, sales, transfer, use and occupancy, business privilege, net profits, occupation and withholding taxes, excluding any interest, penalties or additions attributable to or imposed on or with respect to such taxes, charges, fees, levies or other assessments.

Section 1.41.            Intentionally Deleted

Section 1.42            "Tax Secured Claims" means the claims filed by the Internal Revenue Service and the Comptroller of Public Account for the State of Texas, and the Texas Workforce Commission whether or not such claim is secured.

## ARTICLE II

## PROVISIONS FOR THE TREATMENT OF ADMINISTRATIVE CLAIMS AND TAX PRIORITY CLAIMS

Section 2.1.            Administrative Expense.    Each holder of an   Allowed Administrative Expense shall be paid in full in Cash on the Effective Date by the Disbursing Agent, except that (a) Administrative Expenses representing obligations incurred in the ordinary course of business by the Debtor shall be paid in accordance with the terms of any agreement upon which such Allowed Claim is based and (b) the holders of Allowed Administrative Expenses may be paid on such other date and upon such other terms as may be agreed upon by that holder and Debtor. Claims for Professional Fees shall be paid on the later of the Effective Date or the date upon which any order awarding fees becomes a Final Order.

Section 2.2.            Administrative Expenses. Debtor will continue to pay all U.S. Trustee Fees and that the debtors will file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports in a format satisfactorily to the U.S. Trustee for each quarter the case remains open in Chapter 11. Debtor shall pay all post-petition taxes in the ordinary course.

# ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS/ELIGIBILITY TO VOTE

For the purpose of voting on this Plan and receiving Distributions thereunder, pursuant to Section 1122 of the Bankruptcy Code, Claims and Interests are divided into the Classes set forth below. Administrative Expenses and Tax Priority Claims of the kinds specified in Sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code, the treatment of which is set forth in Article II hereof, have not been classified and are excluded from the following classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.

<u>Class 1 Claims</u>. *Ad Valorem* Tax Claims.

<u>Class 2 Claim</u>. Tax Secured Claims.

<u>Class 3 Claim</u>. Claims of BMO Harris Bank N.A.

<u>Class 4 Claims</u>. Non-Insider Unsecured Claims.

# ARTICLE IV

## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND UNIMPAIRED BY THIS PLAN

Section 4.1.  <u>Designation of Unimpaired Classes</u>.  No class is deemed unimpaired, within the meaning of §1124 of the Bankruptcy Code.

Section 4.2.  <u>Designation of Impaired Classes and Interests</u>.  All Claims in Classes 1, 2, 3 and 4 are impaired.

Section 4.3.  <u>Voting and Non-Voting Classes</u>.  Classes 1, 2, 3 and 4 are entitled to vote to accept or reject this Plan.

ARTICLE V

TREATMENT OF CLAIMS AND INTERESTS

Section 5.1.　　　　　Class 1 Claim - *Ad Valorem* Tax Claim.　Class 1 pertains to the secured claim of Bexar County (and for those taxing entity which Bexar County collects ad valorem taxes) in the amount of $21,027.22 consisting of the following ad valorem tax accounts:

Account No. 000001233662 in the amount of $16,020.48 for 2016 ad valorem taxes incident to the business personal property of Total Media Solutions, 3535 N. PanAm Expressway, #3515, San Antonio, Texas;

Account No. 000001157939 in the amount of $1,439.72 for 2014 and 2015 ad valorem taxes incident to the business personal property of Total Media Solutions, 123 Heiman, San Antonio, Texas; and

Account No. 000001055324 in the amount of $3,537.02 for 2006 and 2007 ad valorem taxes incident to the business personal property of Total Media Solutions, Inc., 875 Ashby Place, San Antonio, Texas.

The Bexar County allowed claim in the amount of $21,027.22 pertaining to the above referenced ad valorem tax accounts will be paid in full in twelve (12) equal, consecutive monthly installments, with the first payment being made on April 1, 2017.　Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the confirmation date on those taxes for years 2015 and prior and from February 1, 2017 to the confirmation date on those taxes for year 2016.　Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full.

Notwithstanding any provision to the contrary, in the event the Debtor sells, conveys or transfers any of the properties which are the collateral of the Bexar County claim or post confirmation tax debt, the Debtor shall remit such sales proceeds first to Bexar County to be applied to the Bexar County tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtor may pre-pay the pre-petition tax debt to Bexar County at any time.　The Debtor shall have thirty (30) days from the Effective Date to object to the Bexar County claim; otherwise, such claim is deemed as an allowed secured claim in the amount of the Bexar County Proof of Claim.　Bexar County shall retain its statutory lien securing its prepetition and post-petition tax debts until such time as the tax debt respective to each property are paid in full.　Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2017 and subsequent tax years) owing to Bexar County in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of Bexar County to file an administrative claim and request for payment.　Should this case be converted to Chapter 7 or should this case be dismissed, neither the Debtor nor Bexar County shall be bound by the terms of this Chapter 11 Plan.

Should the Reorganized Debtor fail to make any payments as required in this Plan, Bexar County shall provide written notice of that default by sending written notice by certified mail to Debtor and Debtor's counsel advising of that default, and providing the Reorganized Debtor with

a period of fifteen (15) days to cure the default. In the event that the default is not cured within fifteen (15) days, Bexar County may, without further order of this Court or notice to the Debtor, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtor is still paying any pre-petition debt, shall be considered an event of default. Bexar County shall provide Debtor and Debtor's counsel with written notice of that default and a fifteen (15) day opportunity to cure said default. In the event that the Reorganized Debtor fails to timely cure the post-petition and/or post-confirmation default, Bexar County may, without further order of this court or notice to the Debtor, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than two (2) Notice of Default. In the event of a third (3rd) default, the ad valorem taxing entities may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

Section 5.2. <u>Class 2 Claims – Tax Secured Claims.</u> Each Class 2 Claim shall be paid by monthly payments and shall accrue post-petition and post-confirmation annual interest as follows:

| <u>Tax Creditor</u> | <u>Monthly Payment</u> | <u>Interest Rate</u> |
|---|---|---|
| Internal Revenue Service | $3,000.00 | 4% |
| Texas Comptroller | $1,500.00 | 4.75% |
| Texas Workforce Comm. | $100.00 | 4.75% |

Monthly payments shall begin April 1, 2017. Any remaining principal and any accrued interest not paid by May 1, 2022 shall be due and payable on May 15, 2021.

Section 5.3 <u>Provisions Applicable to Texas Taxing Authorities</u>. Notwithstanding anything else to the contrary in this Plan or the Confirmation Order, these provisions will govern the treatment of the claims of the Texas Comptroller of Public Accounts and Texas Workforce Commission (collectively, the "Texas Taxing Authorities"): (1) nothing provided in this Plan or the Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas Taxing Authorities in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or this Confirmation Order shall affect or impair any rights of the Texas Taxing Authorities to pursue any non-debtor third parties for tax debts or claims; (3) nothing provided in the Plan or this Confirmation Order shall be construed to preclude the payment of interest on the Texas Taxing Authorities' administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Texas Taxing Authorities, the interest rate shall be the statutory rate of interest, currently 4.75% per annum; and (5) the Texas Taxing Authorities are not required to file a motion or application for payment of administrative expense claims; the Texas Taxing Authorities' administrative expense claims are allowed upon filing, including, but not limited to, the unpaid sales taxes owed to the Texas Comptroller for the period November 2016.

Secured and/or priority tax claims owed to the Texas Taxing Authorities shall be paid in full within sixty (60) months of the Debtor's bankruptcy petition date. Payments shall be in equal

monthly installments of principal and accrued interest. The first installment is due within thirty (30) days of the Plan's effective date. The Texas Taxing Authorities secured and/or priority tax claims shall accrue interest at the statutory rate of interest, currently 4.75% per annum, from the Plan's effective date until paid in full.

A failure by the Debtor or Reorganized Debtor to make a plan payment to an agency of the State of Texas shall be an Event of Default. If the Debtor or Reorganized Debtor fails to cure an Event of Default as to an agency of the State of Texas within ten (10) days after service of a written notice of default, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court. The Debtor and/or Reorganized Debtor can receive up to three (3) notices of default, however, the third default cannot be cured.

The terms set forth herein shall govern the treatment of the claims of the Texas Taxing Authorities notwithstanding anything to the contrary in this Plan or the Confirmation Order.

Section 5.4        Provisions Applicable to the Internal Revenue Service. A failure by the Debtor to make a payment to the Internal Revenue Service pursuant to the terms of the Plan and/or failure to remain current on filing and paying post-confirmation taxes, shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the 15th day of each month. If there is a default, the Internal Revenue Service must send written demand for payment, and said payment must be received by the Internal Revenue Service within 10 days of the date of the demand letter. The Debtor shall be entitled to not more than one (1) notice of default from the Internal Revenue Service. Upon the second default by the Debtor, the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding  amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. If the Debtor fails to timely cure any default, the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority and unsecured general.

The IRS is bound by the provisions of the confirmed plan and is barred under 11 USC 1141 from taking any collection actions against the debtors for prepetition claims during the duration of the Plan (provided there is no default as to the IRS). Furthermore, the period of limitations on collection under 26 USC 6503 (h) for the tax periods being paid under the Plan is suspended during the duration of the Plan (provided there is no default as to the IRS).

The period of limitations on collection remains suspended under 26 USC 6503 (h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the IRS have been made; or (2) 10 days after the date of the demand letter (described above) for which the debtor failed to cure the default.

The Internal Revenue Service will agree to withhold collections of the trust fund recovery penalty assessment against the responsible persons during the duration of the Plan (provided there is no default as to the IRS). This agreement only encompasses the tax periods involved in and provided for under the confirmed plan. The forbearance of collection efforts by the Internal Revenue Service does not preclude any action by the IRS to file liens or otherwise to perfect a

security interest against the responsible persons as permitted under federal and state law. The IRS will withhold collection efforts against responsible persons and the period of limitations on collection will be suspended under 26 U.S.C. 6503(h) for the trust fund periods and until the earlier of (1) all required payments to the Internal Revenue Service have been made under the Plan; or (2) ten (10) days after the date of the demand letter (described above) for which the debtor failed to cure the default.

The Debtor must remain current with respect to all post-petition federal tax liabilities, including the timely filing of tax returns and payment of all tax liabilities as required by applicable law during the term of the Plan. Failure to remain current with respect to one or more post-petition federal tax liabilities shall constitute an event of default under the Plan; however, the Bankruptcy Court shall have no jurisdiction over any tax issues arising after the date of confirmation. There will be no automatic stay or post-confirmation injunction with regard to federal tax liabilities accrued after the Petition Date (January 27, 2016), and the IRS shall be free to collect any such liabilities in accordance with the provisions of Title 26 of the United States Code and other applicable law.

To the extent the Debtor has made, or makes in the future, any overpayment of post-petition taxes, post-petition over payments of federal taxes may be setoff against any post-petition federal tax liabilities as allowed by applicable law.

Agreement with the Internal Revenue Service: The federal tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case. The liens continue to be enforceable against the Reorganized Debtor's property to the extent, priority, and validity such liens were entitled to as of the Petition Date and under federal law.

Section 5.5        Class 3 Claim- Claims of BMO Harris Bank N.A.  The Class 3 Claims will be paid by monthly payments in the amount as required by the contract at the contract rate of interest.  The pre-petition arrearage on the Class 3 Claim shall be paid by extending the term of each promissory note supporting the Class 3 claim by sixty (60) days.

Section 5.6.        Class 4 Claims - Non-Insider Unsecured Claims.  Each holder of an Allowed Class 4 Non-Insider Unsecured Claim, including Allowed Rejection Claims, if any, shall be paid their claim amount in equal monthly installments over a sixty (60) month period. No interest shall accrue on Class 4 Claims. Payments shall be made on a monthly basis beginning April 15, 2017. Each holder of a Class 4 Claim should receive a dividend in the amount of 100% of its allowed claim over the term of the Plan.

ARTICLE VI FUND-

ING OF THE PLAN

Section 6.1.        Funding of the Plan.  The Plan shall be funded by the cash flow of the Debtor.  Additionally, all proceeds collected by Debtor as a result of the Litigation will be contributed to the plan and will be used to extinguish the claims.  Such proceeds shall first be al-

located to Class 2 then to Class 4.

Section 6.2.        Distributions in Respect of Disputed Claims.

(a)     Except as may be otherwise agreed to in respect of any Disputed Claim and approved by the Bankruptcy Court, no distribution shall be made in respect of any portion of a Disputed Claim unless such Disputed Claim shall have become an Allowed Claim.

(b)     Upon any Distribution to a Class for which there exists any Disputed Claims, the Disbursing Agent shall set aside an amount of Cash equal to the amount of the Distribution on account of the Disputed Claim(s), unless previously provided for. At such time thereafter that the Disputed Claim(s) becomes an Allowed Claim, the Disbursing Agent shall make payment in Cash equal to the amount such holder would have received had such holder's Disputed Claim been an Allowed Claim as of the Effective Date. Excess Cash set aside for Disputed Claims after they have been disallowed or become an Allowed Claim, shall be the property of the Estate and disbursed as per this plan.

Section 6.3.        Unclaimed Distributions.    The Disbursing Agent shall make payments to holders of Allowed Claims at the address specified in the Schedules unless a different address is specified on a proof of claim or at such other address as shall be specified in writing to the Disbursing Agent on or before the Effective Date. If any distribution is returned as undeliverable or if any check delivered pursuant to the distribution remains uncashed, all uncashed or unclaimed distributions shall be held for the benefit of the holders of the Allowed Claims entitled thereto for a period of six months following the Effective Date. Thereafter, any Distribution not then claimed shall be the property of the Debtor.

ARTICLE VII

EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

Section 7.1.        Failure of a Class to Accept the Plan.    If any impaired Class    fails to accept this Plan in satisfaction of the requirement of §1129(a)(8) of the Bankruptcy Code, the Debtor intends to request that the Bankruptcy Court confirm this Plan by cramdown in accordance with §1129(b) of the Bankruptcy Code.

ARTICLE VIII CON-

DITIONS PRECEDENT

Section 8.1.        Conditions Precedent to the Effective Date.    The following shall be conditions precedent to the Effective Date of the Plan. Absent satisfaction of these conditions within the time specified herein, Debtor shall have no obligations to any Person under the Plan:

(a)     The Bankruptcy Court shall have entered one or more orders confirming the Plan;

(b)     At least eleven days shall have elapsed after the date of the Confirmation Order;

(c)     The Confirmation Order shall not have been stayed, or if stayed, such stay shall have been terminated or expired or is no longer in effect;

Section 8.2.          <u>Waiver of Conditions Precedent</u>.  Any condition precedent to   the Effective Date may be waived without any further notice to any party-in-interest and without further Court Order.

Section 8.3.          <u>Notification of Effective Date</u>.  The Debtor shall advise all   parties in interest when the Effective Date has occurred in accordance with this Plan.

## ARTICLE IX

## ADDITIONAL MEANS TO IMPLEMENT THE PLAN

Section 9.1.          <u>Further Acts</u>.  To the fullest extent permitted by §1142 of the Bankruptcy Code, the Debtor shall have the right to apply to the Bankruptcy Court for an order excusing compliance with any otherwise applicable non-bankruptcy law or directing any Person to execute and deliver any instrument or perform any other act; provided, however, that without the consent of the affected Person or Persons, no such order shall modify or impair any right, title, privilege or remedy expressly provided or reserved under this Plan.

Section 9.2.          <u>Covenants</u>.  From the Confirmation Date until the Effective  Date, the Debtor shall not:

(i)     liquidate, merge, or consolidate with any other entity, or sell, assign or lease any of its assets, whether now owned or hereafter acquired, unless specifically provided for in this Plan or unless otherwise approved by the Court;

(ii)     make or agree to make any loan to or investment  in any other Person;

(iii)   directly or indirectly create, incur, assume, guarantee, or otherwise become liable for any indebtedness, except for utilities and ordinary operating expenses in the ordinary course of business, and taxes as provided for by the Plan;

(iv)   create, assume, or incur directly or indirectly any mortgage, deed of trust, pledge, lien or security interest with respect to any property of the Debtor;

(v)   create, incur, assume or pay any obligation as lessee or lessor under any lease or agreement commencing subsequent to the Confirmation Date;

(vi)   take any other direct or indirect act to interfere or hinder the implementation of this Plan.

## ARTICLE X

## PROCEDURES FOR CLAIMS RESOLUTION

Section 10.1.      <u>Claims Bar Date</u>.  All Claims were required to have been filed against the Debtor by the Claims Bar Date.

Section 10.2.      <u>Objection Bar Date</u>.   All objections to Claims shall be served upon counsel to the Debtor, and on the holder of the Disputed Claim, and filed prior to the Effective Date. All Disputed Claims shall be litigated to Final Order, settled or withdrawn, as may be necessary to effectuate the provisions of this Plan. The Debtor shall have the authority to settle disputed claims, subject to entry of a Final Order. Moreover, nothing shall affect the right of a party in interest to file objections or to continue to pursue objections that were filed prior to the Effective Date, or object to any settlement of Disputed Claims which may be reached.

## ARTICLE XI EXECU-

## TORY CONTRACTS

Section 11.1.      <u>Rejection of Certain Contracts</u>.  None.

Section 11.2.      <u>Rejection Claims</u>.   All Claims arising from rejection of Executory Contracts shall be forever barred unless a Rejection Claim is duly filed with the Bankruptcy Court and served on counsel for the Debtor within 30 days after the Confirmation Date, or such earlier date as may be set by the Bankruptcy Court. Any Rejection Claim shall be classified in Class 5 pursuant to §502(g) of the Bankruptcy Code.

Section 11.3.      <u>Objections</u>.   Any party in interest may file an objection with   the Bankruptcy Court to any Rejection Claim duly filed within 30 days after filing of same or such earlier date as may be set by the Bankruptcy Court.

# ARTICLE XII

## EFFECT OF CONFIRMATION

Section 12.1.    <u>On the Debtor/ Discharge</u>.    Confirmation of the Plan discharges the Debtor from any debt that arose before the date of confirmation and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan.

## ARTICLE XIII RETENTION OF JURISDICTION

Section 13.1.    <u>Scope of Jurisdiction</u>.    Until entry of a Final Order closing this case, the Bankruptcy Court shall have exclusive jurisdiction over all matters arising under, arising in, or relating to the Case or this Plan, to the full extent permitted by 28 U.S.C. §1334 to hear, and to the full extent permitted by 28 U.S.C. §157 to determine all proceedings in respect thereof.

Section 13.2    <u>Conversion</u>.    If Debtors' case is converted to Chapter 7 all non-exempt assets of the Debtor will become property of the Chapter 7 estate subject to administration by the Chapter 7 Trustee.

## ARTICLE XIV MODIFICATIONS

## OF THE PLAN

Section 14.1.    <u>Prior to Confirmation Date</u>.    The Debtor may amend, modify or withdraw the Plan at any time prior to the Confirmation Date.

Section 14.2.    <u>Prior to the Effective Date.</u> The Debtor may amend or modify this Plan in accordance with §1127 of the Bankruptcy Code at any time on or prior to the Effective Date.

Section 14.3.    <u>After the Effective Date</u>.    After the Effective Date, Debtor may propose amendments to the Plan for approval by the Bankruptcy Court.

## ARTICLE XV GENERAL

## PROVISIONS

Section 15.1.    <u>Headings</u>.    The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

Section 15.2.    <u>Severability</u>.    Should any provision of this Plan be determined to

be unenforceable for any reason, such determination shall in no way limit or affect the enforcea-bility or operative effect of any other provision of the Plan.

Section 15.3. <u>Governing Law</u>. Except to the extent the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed and enforced in accordance with the laws of the State of Texas.

Section 15.4. <u>Filing of Additional Documents</u>. On or before the Confirmation Date, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Section 15.5. <u>Recordation of Plan</u>. The Debtor at its option may record the Plan and Confirmation Order in the Recording Office or any other office it deems appropriate.

Section 15.6 <u>Retention of Claims and Causes of Action.</u> It is the Debtor's intent to retain and pursue post-confirmation all pre-petition claims and Causes of Action to which it may be entitled specifically including, but not limited to, those claims and Causes of Action con-tained in the Litigation.

Dated: January 30, 2017

Villa & White LLP

1100 NW Loop 410 #700
San Antonio, Texas 78213
(210) 225-4500 Telephone
(210) 212-4649 Facsimile

BY: _/s/ Morris E. "Trey" White III_
Morris E. "Trey" White III
Texas Bar No. 24003162
Attorney for Debtor

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 30, 2017 a true and correct copy of the above and foregoing document was served on the following pursuant to Bankruptcy Rule 9013.


_/s/ *Morris E. "Trey" White III*_
Morris E. "Trey" White III